[Cite as *State v. Cunningham*, 2018-Ohio-4022.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 106109**

# STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

# SELVIN CUNNINGHAM

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-17-614808-A

**BEFORE:**   McCormack, P.J., Stewart, J., and Boyle, J.

**RELEASED AND JOURNALIZED:**   October 4, 2018

[Cite as *State v. Cunningham*, 2018-Ohio-4022.]

**ATTORNEY FOR APPELLANT**

Myriam A. Miranda
P.O. Box 40222
Bay Village, OH 44140


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

Jennifer King
Assistant County Prosecutor
Justice Center, 9th Floor
1200 Ontario Street
Cleveland, OH   44113

TIM McCORMACK, P.J.:

{¶1} Defendant-appellant Selvin Cunningham ("Cunningham") appeals his convictions for corrupting another with drugs and promoting prostitution. For the reasons that follow, we affirm.

## Procedural and Substantive History

{¶2} On February 23, 2017, Officer Stephen Krebs ("Krebs") was conducting surveillance on a Super 8 motel in Westlake, Ohio as part of his duties as a patrolman for the Westlake Police Department. Krebs learned that room 205 was rented and had been paid for in cash. He also observed that the vehicle associated with room 205 was not associated with the renter of the room. This led Krebs to continue monitoring room 205.

{¶3} When Krebs observed the vehicle associated with the room exit the motel's parking lot, he proceeded to follow the vehicle. Upon observing a traffic violation, Krebs conducted a traffic stop. During the stop, Krebs discovered that Cunningham, the driver of the vehicle, was driving under a suspended license. Krebs also noticed a strong odor of marijuana coming from the vehicle. Krebs detained Cunningham and conducted a search of Cunningham and an inventory search of the vehicle, which produced a Super 8 room key.

{¶4} Krebs transported Cunningham back to the motel, where officers observed Demetrius Brown ("Brown") leaving room 205. Officers questioned Brown, who stated that he had been alone in the motel room. Krebs noticed that the door to room 205 was ajar and proceeded to knock on the door. A woman later identified as J.M. answered the

door and provided Krebs with a false name. Krebs testified that the room was in disarray and something he suspected to be heroin was in plain sight on a table inside the room. Krebs testified that he believed that J.M. was a heroin user based on her appearance and demeanor. The officers proceeded to collect evidence from the room, including the suspected heroin from the table and other apparent drug paraphernalia located in J.M.'s purse. During a subsequent interview, J.M. told police that she had been working as a prostitute, primarily finding clients through ads posted on Backpage.com.

**{¶5}** Cunningham and Brown were both arrested and charged with one count of corrupting another with drugs, in violation of R.C. 2925.02(A)(2), and one count of promoting prostitution, in violation of R.C. 2907.22(A)(2).

**{¶6}** On April 14, 2017, Brown's counsel filed a motion for separate trials. The court granted this motion on May 4, 2017.

**{¶7}** Cunningham's case proceeded to a jury trial on June 12, 2017. The state presented testimony from Krebs and J.M., as well as Nathan Yockey, a representative from Backpage.com, and several other law enforcement officers.

**{¶8}** At the close of the state's case on June 14, 2017, Cunningham made a Rule 29 motion. The court denied this motion. After deliberating, the jury returned guilty verdicts for both counts.

{¶9} On July 10, 2017, the court sentenced Cunningham to four years for corrupting another with drugs and one year for promoting prostitution, to run concurrent to each other.   Cunningham appealed.

## Law and Analysis

{¶10} Cunningham presents four assignments of error for our review, arguing that (1) his convictions are not supported by legally sufficient evidence; (2) his convictions are against the manifest weight of the evidence; (3) he was denied effective assistance of counsel; and (4) the trial court erred when it overruled his objection to testimony of his character or prior bad acts in violation of his due process rights.

## I. Sufficiency

{¶11} Cunningham first challenges the sufficiency of the evidence supporting his convictions.   With respect to Count 1, corrupting another with drugs, he asserts that the state failed to provide evidence establishing that he furnished J.M. with heroin with the purpose of causing either physical harm or causing her to become drug dependent.   With respect to Count 2, promoting prostitution, he argues that the state failed to provide evidence establishing that he supervised, managed, or controlled J.M.'s prostitution.

{¶12} A sufficiency challenge requires a court to determine whether the state has met its burden of production at trial and to consider not the credibility of the evidence but whether, if credible, the evidence presented would support a conviction.   *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).   The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any

rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 273, 574 N.E.2d 492 (1991), citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

## A. Corrupting Another With Drugs

{¶13} Cunningham was convicted under R.C. 2925.02(A)(2), which makes it a crime to knowingly:

> by any means, administer or furnish to another or induce or cause another to use a controlled substance with the purpose to cause serious physical harm to the other person, or with the purpose to cause the other person to become drug dependent.

{¶14} Cunningham argues that, even accepting that the state was able to establish that he knowingly furnished J.M. with heroin, it was unable to establish that he did so with the purpose to either cause serious physical harm or cause her to become drug dependent.

{¶15} With respect to whether Cunningham gave J.M. heroin with the purpose of causing serious physical harm, the state argues that because heroin is a serious and deadly drug, it causes physical harm every time it is administered. Therefore, according to the state, establishing that Cunningham furnished J.M. with heroin necessarily satisfies the "purpose to harm" element of the statute, by virtue of heroin's potency. We agree. The record shows that Cunningham was well aware of the destructive effect that heroin has had and continues to have on J.M.'s life, and he knowingly continued to provide her with this deadly drug and profit from her broken state of fevered addiction on a daily

basis. In this way, unquestionably, Cunningham knowingly inflicted harm on J.M. each day that he provided her with heroin, all for crass, selfish purposes. He actively recorrupted her with each day's dose. Further, this ongoing purposeful conduct perpetuated J.M.'s life-threatening addiction. For these reasons, we find that there was sufficient evidence to support Cunningham's conviction for corrupting another with drugs in violation of R.C. 2925.02(A)(2).

## B. Promoting Prostitution

{¶16} Cunningham was convicted under R.C. 2907.22(A)(2), which makes it a crime to knowingly "supervise, manage, or control the activities of a prostitute engaging in sexual activity for hire." In challenging the sufficiency of his conviction for promoting prostitution, Cunningham argues that the state did not present sufficient evidence to establish that he was supervising, managing, or controlling J.M. We disagree.

{¶17} Cunningham bases his argument largely on J.M.'s testimony, in which she stated that she posted her own ads on Backpage.com, using her own phone number and referring to herself as an independent provider. J.M. also testified that she would determine how many clients she would see and when she would see them. We do not revisit that here. However, J.M. further testified that when she was prostituting herself in February 2017, she was doing so under Cunningham's direction. She further testified that at that time, Cunningham was her pimp. For purposes of a sufficiency of the evidence analysis, this testimony establishes that the state met its burden.

## II. Manifest Weight

{¶18} In his second assignment of error, Cunningham asserts that his convictions were against the manifest weight of the evidence. Unlike a challenge to the sufficiency of evidence, a manifest weight challenge attacks the quality of the evidence and questions whether the state met its burden of persuasion at trial. *State v. Hill*, 8th Dist. Cuyahoga No. 99819, 2014-Ohio-387, ¶ 25, citing *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 13. When reviewing a manifest weight challenge, a court reviews the entire record, weighing all evidence and reasonable inferences and considering the credibility of the witnesses, to determine whether the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541.

{¶19} Cunningham argues that the jury clearly lost its way and created a manifest miscarriage of justice. However, while Cunningham articulated the appropriate standard for a manifest weight challenge, he reproduces his arguments as to the sufficiency of the evidence to support this assignment of error. By reincorporating his sufficiency argument into his manifest weight argument, Cunningham has failed to set forth an independent argument for each assignment of error as required by App.R. 16(A)(7). *State v. Brown*, 8th Dist. Cuyahoga No. 87932, 2007-Ohio-527, ¶ 13. Therefore, we decline to address this assignment of error.

## III. Ineffective Assistance of Counsel and Vigneaux's Testimony

{¶20} Because Cunningham's third and fourth assignments of error are closely connected, we will address them together. In Cunningham's third assignment of error, he argues that his counsel was ineffective for failing to request a mistrial. In his fourth assignment of error, he argues that the trial court erred when it overruled his counsel's objections to several pieces of witness testimony.

{¶21} The testimony in question was elicited from Brian Vigneaux, an investigator specializing in human trafficking employed by the Cuyahoga County Prosecutor. The following exchange took place during the state's direct examination of Vigneaux:

PROSECUTOR: Did a case come to you in 2017 regarding Mr. Cunningham?

VIGNEAUX: Yes.

PROSECUTOR: And how did that case come to you?

VIGNEAUX: Westlake had this case on a promoting prostitution and drug related issue, and I was — we were forming a [task] force to investigate human trafficking so Westlake police was hooked into that task force so I became aware of this investigation and then I knew who the bad guy was and so I —

DEFENSE COUNSEL: Objection.

THE COURT: Overruled.

VIGNEAUX: I knew who the alleged person was that was running the operation from the past and so I —

DEFENSE COUNSEL: Objection.

THE COURT:    Sustained.

After several more questions related to Vigneaux's work on this case, the following exchange took place:

PROSECUTOR:    Had you ever seen Selvin Cunningham before?

VIGNEAUX:    Yes.    I've known him since January of 2014.

DEFENSE COUNSEL:    Objection.

THE COURT:    Sustained. Let's go to side bar.

**{¶22}** Following the sidebar, the court instructed the jury to disregard any testimony about any alleged prior investigations.

**{¶23}** Cunningham argues that this testimony was so prejudicial that, even when considering the curative instruction, his counsel's failure to request a mistrial was ineffective and the trial court's decision to overrule one of his counsel's three objections was error.

**{¶24}** To establish ineffective assistance of counsel, a defendant must demonstrate that (1) counsel's performance at trial was seriously flawed and deficient and fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).   A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id*. at 687-688.

**{¶25}** We disagree with Cunningham and find that his counsel's decision not to request a mistrial was not deficient. In a similar context, the Ohio Supreme Court found defense counsel's decision to secure a curative instruction from the court as to prior bad acts testimony rather than request a mistrial to be a tactical decision. *State v. Nields*, 93 Ohio St.3d 6, 33, 752 N.E.2d 859 (2001). We reach the same conclusion here.

**{¶26}** Similarly, we find no error in the trial court's decision to overrule defense counsel's first objection to Vigneaux's testimony. "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Evid.R. 404(B). However, this evidence may be admissible for other purposes, such as to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id*.; R.C. 2945.59. Trial courts have broad discretion in deciding whether to admit or exclude other-acts evidence. *State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, 15 N.E.3d 818, ¶ 67. Therefore, reviewing courts will ordinarily defer to the trial court's evidentiary ruling unless the court clearly abuses its discretion and prejudices the defendant.

**{¶27}** As an initial matter, we note that "[c]urative instructions are presumed to be an effective way to remedy errors that occur during trial." *Parma Hts. v. Owca*, 2017-Ohio-179, 77 N.E.3d 505, ¶ 37 (8th Dist.), citing *State v. Treesh*, 90 Ohio St.3d 460, 739 N.E.2d 749 (2001). Here, the trial court sustained two of three objections related to prior investigations, and issued an explicit curative instruction as to all three of the statements to which defense counsel objected.

{¶28} The record offers no reason to conclude that the jury declined to follow the curative instruction, or that Cunningham was unfairly prejudiced by the testimony, despite the curative instruction. Cunningham argues that Vigneaux's testimony was so prejudicial that the curative instruction was unable to achieve its purpose. We disagree. Vigneaux did not testify as to any criminal history of Cunningham, only that he was familiar with him from a prior investigation. Vigneaux did not explain the outcome of any prior investigation, nor did he testify as to Cunningham's involvement with any prior criminal incidents. In light of the evidence in the case and the absence of any indication that the curative instruction was ineffective, we find no error in the trial court's decision to overrule defense counsel's initial objection to Vigneaux's testimony. Based on the foregoing, we overrule Cunningham's third and fourth assignments of error.

{¶29} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
TIM McCORMACK, PRESIDING JUDGE

MARY J. BOYLE, J., CONCURS;
MELODY J. STEWART, J., CONCURS IN PART AND DISSENTS IN PART (WITH SEPARATE OPINION ATTACHED)

MELODY J. STEWART, J., CONCURRING IN PART AND DISSENTING IN PART:

{¶30} I concur with the decision reached by the majority in all respects except for its resolution that the state presented sufficient evidence of corrupting another with drugs as charged in the indictment. I therefore concur in part and dissent in part.

{¶31} The majority finds that the state presented sufficient evidence to affirm Cunningham's conviction for corrupting another with drugs, in violation of R.C. 2925.02(A)(2) because heroin is a "serious and deadly" drug that "causes physical harm each time it is administered," and because Cunningham was "well aware of the

destructive role" heroin played in J.M.'s life and nevertheless exploited that. With all due respect to the unfortunate but nonetheless accurate characterization of the facts in this case, those facts do not satisfy the requisite mens rea for culpability under the statute.

{¶32} R.C. 2925.02(A)(2) provides that "[n]o person shall knowingly * * * [b]y any means, administer or furnish to another or induce or cause another to use a controlled substance *with purpose to cause* serious physical harm to the other person*, or with purpose to cause* the other person to become drug dependent * * *." (Emphasis added.) As such, in addition to proving that Cunningham knowingly provided J.M. heroin, the state was also required to prove that Cunningham did so for the specific purpose of either causing her serious physical harm, or causing her to become drug dependent.

{¶33} The majority points to no evidence of a causal link between Cunningham's providing J.M. heroin and his intention to cause her serious physical harm. Indeed, an intention to harm J.M. by giving her drugs both undercuts the state's theory of the case and contradicts the evidence presented. Cunningham was J.M.'s pimp; his ability to profit from exploiting her would decrease or even disappear to the extent that he harmed her. So having a purpose to do so is contrary to his own gain.

{¶34} The majority also fails to cite any evidence indicating a causal link between Cunningham's providing J.M. heroin and an intention to cause her to become drug dependent. To the contrary, J.M. testified that she was addicted to heroin before she met Cunningham. He therefore could not have intended the initiation of her dependency. Her drug dependancy already existed.

{¶35} The evidence showed that Cunningham provided J.M. heroin. Moreover, it goes without saying that repeated heroin use causes serious physical harm. However, the fact that heroin use causes serious physical harm and the fact that Cunningham provided the drug to J.M. are not, in and of themselves, sufficient to satisfy all of the necessary elements of the offense pursuant to R.C. 2925.02(A)(2).

{¶36} R.C. 2925.02(A)(3), another subdivision of the offense, does not, however, require the same mens rea or culpable mental state as subdivision (A)(2). That subdivision provides that "[n]o person shall knowingly * * * [b]y any means, administer or furnish to another or induce or cause another to use a controlled substance, *and thereby cause* serious physical harm to the other person, *or cause* the other person to become drug dependent * * *." (Emphasis added.) *Id.* It appears that the majority finds sufficient evidence to support the conviction of corrupting another with drugs in violation of R.C. 2925.02(A)(2) by way of R.C. 2925.02(A)(3). But the state did not charge Cunningham under this subdivision nor did it seek to amend the charge.

{¶37} Absent evidence that Cunningham provided J.M. heroin with the purpose of causing her serious physical harm or with the purpose to cause her to become drug dependent, there was insufficient evidence to sustain a conviction under R.C. 2925.02(A)(2).